**United States District Court**
**District of Massachusetts**

_____
                                )
ERIK ANDERSON,                  )
                                )
          Plaintiff,            )
                                )
          v.                    )    Civil Action No.
                                )    17-11171-NMG
NANCY A. BERRYHILL,             )
                                )
          Defendant.            )
_____)

**MEMORANDUM & ORDER**

GORTON, J.

Erik Anderson ("Anderson" or "plaintiff") seeks judicial review of the partial denial of his application for disability insurance benefits by Nancy A. Berryhill ("the Commissioner" or "defendant"), the acting Commissioner of the Social Security Administration ("the SSA"). Anderson asserts that the decision of the Administrative Law Judge ("ALJ") was erroneous and that he was improperly denied benefits as a result.

Pending before this Court are plaintiff's motion to reverse or remand the Commissioner's decision (Docket No. 24) and defendant's motion to affirm the Commissioner's decision (Docket No. 26). For the following reasons, those motions will be allowed, in part, and denied, in part, and the case will be remanded to the ALJ for further proceedings consistent with this opinion.

## I.   Background

### A.   Employment History and Alleged Disability

Anderson was born in 1961.  He is a high school graduate. He took some additional classes while serving in the Navy where he was an active duty aviation anti-submarine warfare operator from 1980 to 1987.  After his active duty, Anderson continued to serve in the Navy Reserve until 1993.  He was employed in the fast food industry until the early 2000s and as a general laborer thereafter for Labor Ready performing construction cleanup.  He has not maintained steady employment since March, 2008, his alleged onset date.

Anderson testified that he worked for one day in 2010 when he traveled in a van for Labor Ready but he stopped working after that as a result of pain in his lower back, legs and arms. He also testified that he helped one of his friends who is a plumber for a few hours on one other occasion in 2014 but that was not regular employment.  In addition to his general pain, Anderson asserts that his medications cause him dizziness and cognitive impairment.

On March 5, 2008, the alleged onset date for purposes of his application for disability insurance benefits, Anderson visited a doctor for arm pain.  Before his onset date, plaintiff consulted with a variety of doctors to deal with his ailments. In 2000 or 2001, Anderson had a bad period of back pain and saw

a doctor at Milton Hospital. That doctor gave him a lower back injection. The injection helped for a few years after which his condition worsened. In 2008, plaintiff saw a second neurosurgeon for his symptoms. The record reflects that Anderson had an MRI on his spine in 2007, an EMG of his lower left leg in 2008 and that those exams revealed a form of stenosis, a disc bulge and a root lesion.

Since March, 2013, Anderson's last date of insurance and eligibility for disability benefits, he has continued to receive treatment from various doctors for his back pain and mental health. Anderson began treatment with Dr. Veronica Vedensky in February, 2014, and has continued to meet with her intermittently at all relevant times. Dr. Vedensky referred Anderson to a pain clinic and various specialists and monitored his progress as he underwent multiple lumbar epidural steroid injections. He was also prescribed various medications during that time to help treat his pain, including Tizanidine and Gabapentin.

In August, 2014, Anderson met with Dr. Paul Blachman for a neurological consultation where he complained of radiating back pain, pain in his right arm and left leg and numbness in his lower leg. After ordering MRI studies, Dr. Blachman found no evidence of spinal cord abnormality but observed that there was significant degenerative arthritis in Anderson's spine. Upon

further examination, Dr. Blachman determined that Anderson exhibited normal strength and tone, normal gait and no sensory abnormalities. Dr. Blachman referred plaintiff for additional epidural steroid injections. Those injections were partially successful in alleviating his pain for a few months at a time. Anderson visited Dr. Blachman again in June, 2015, after experiencing an intense onset of pain in multiple joints resulting from a tetanus vaccination. Dr. Blachman referred Anderson to a rheumatologist.

In July, 2015, Anderson was referred to physical therapy after complaining that his pain had spread to his shoulders. He was also prescribed Percocet around that time. In October, 2015, it was noted that Anderson had passed out due to dehydration after engaging in vigorous exercise.

In November, 2015, Anderson first met with rheumatologist Dr. Peter Martens who noted that plaintiff had a stiff gait, tenderness and decreased range of motion of the spine. He was prescribed Etodolac for his pain and later Cymbalta, although Anderson was unable to fill the latter prescription because of financial limitations. He saw Dr. Martens again in March, 2016, where he reported that he was unable to lift more than 10 pounds and could not stand more than 10 to 15 minutes at a time or for more than an hour per day. He also stated that he had difficulty with concentration because of his pain and the side

effects from his medication.  Anderson's neurological examination was normal during that visit and the musculoskeletal examination showed limited range of motion in the shoulders and lower back but no muscular tenderness or swelling and normal range of motion in the upper back and neck.  During that visit, Dr. Martens also completed a disability form in which he expressed the opinion that plaintiff could 1) lift and carry no more than 10 pounds, 2) stand and walk less than two hours in an eight-hour work day, 3) sit for less than six hours in an eight-hour work day and 4) never crouch, crawl or stoop but occasionally balance, kneel and climb.

Anderson consulted with Dr. Martens again in July, 2016. The doctor recorded that Anderson was not taking his medication because he could not afford it but that Anderson had reported that physical therapy had significantly decreased his pain.

In addition to his treatment for his physical symptoms, Anderson was seen by two mental health professionals after his date of last insurance.  In October, 2014, Jessica Silbermann, a clinical social worker at Bayview Associates, diagnosed Anderson with a nonspecific anxiety disorder.  As part of her diagnosis, Silbermann noted that Anderson exhibited abnormalities in his mental status examination and difficulty with memory.  She conducted a cognitive assessment known as a Global Assessment of Functioning ("GAF"), which is a numeric score used by mental

health physicians to assess the severity of mental impairment. That assessment yielded a score of 50 which indicated serious symptoms or impairments.

In March, 2015, Anderson underwent a psychiatric consultative examination by Dr. Leah Logan.  She recorded that Anderson had difficulty remembering words after a short delay but that his speech was normal in rate, volume and tone and that he appeared to be in a good mood throughout the interview.  She conducted both a GAF and a Montreal Cognitive Assessment ("MoCA"), another test to assess cognitive impairments. Anderson scored a 63 and a 23 respectively on those cognitive tests, both of which indicate mild limitations or cognitive impairments.

### B.    State Physician Medical Opinions

State agency medical opinions were submitted pertaining to Anderson's physical and mental health conditions.  With respect to plaintiff's physical impairments, Dr. Rudolf Titanji reviewed plaintiff's record in January, 2015, and Dr. Mary Connelly reviewed his record in September, 2015.  Both physicians provided opinions as to plaintiff's physical limitations.  Dr. Titanji opined that Anderson had a severe impairment of degenerative disc disease.  Both physicians agreed that plaintiff could 1) occasionally lift and/or carry 20 pounds, 2) frequently lift and/or carry 10 pounds, 3) sit, stand and/or

walk for about six hours each in an eight-hour work day, 4) occasionally climb and stoop and 5) should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation.

With respect to plaintiff's mental impairments, Dr. William Alexander reviewed plaintiff's record in March, 2015, and Dr. Lawrence Langer reviewed his record in September, 2015. Both doctors agreed that Anderson did not have a severe mental impairment.

### C.    Application for Disability Insurance

Anderson filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI") on October 28, 2014, and November 14, 2014, respectively. He claimed multiple disabilities including 1) hearing issues (tinnitus and hearing loss), 2) a back condition (degenerative disc disease), 3) a neck condition (nerve damage), asthma and 4) various cognitive impairments (memory loss, anxiety disorder and PTSD). After receiving an initial denial and a denial of reconsideration from the Commissioner, plaintiff requested a hearing before an ALJ.

### D.    The ALJ's Decision

In November, 2016, a hearing was held before ALJ Carol Sax. The ALJ issued a partially favorable decision for Anderson in December, 2016, finding that he was not disabled through October 29, 2016, but became disabled on October 30, 2016, the day

before his 55th birthday.  On that date, plaintiff entered the "person of advanced age" category pursuant to the Medical-Vocational Rules. 20 C.F.R. § 404.1563.  Prior to that date, he was in the "person closely approaching advanced age" category for individuals between the ages of 50 and 54. Id.  To qualify for disability benefits prior to his 55th birthday, plaintiff would have needed a residual function capacity ("RFC") determination of "sedentary" but after that he needed only to have a "light" RFC determination to qualify for disability benefits.

Because the ALJ found that Anderson had a RFC for light work, she determined that he was not disabled before his 55th birthday but became disabled thereafter once he entered the "person of advanced age" category.  She thus granted him SSI benefits from his 55th birthday onward.  The ALJ did not, however, grant Anderson DIB benefits because to receive DIB benefits the period of disability cannot begin after the date of the worker's last insurance which, for plaintiff, was March, 2013.

To arrive at that decision, the ALJ utilized the standard five-step evaluation process to evaluate Anderson's disability claims. See 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Anderson's onset date was March 5, 2008, and that he had not engaged in substantial

gainful activity ("SGA") since that date.  The ALJ also
determined that plaintiff met the insured status requirements
through March 31, 2013, his date of last insurance.

At step two, the ALJ concluded that Anderson has had a
severe impairment of degenerative disc disease since his alleged
onset date of March, 2008.  The ALJ determined that Anderson's
asthma, hearing loss and anxiety are non-severe impairments.  In
concluding that Anderson's anxiety disorder is not severe, the
ALJ noted that his GAF score of 63 indicated only mild symptoms
or limitations in functioning.  The ALJ did not discuss the
lower GAF score, the MoCA score or Dr. Logan's additional
observations that Anderson exhibited memory issues.

At step three, the ALJ found that Anderson's impairments
did not meet or equal one of the listed impairments in 20 C.F.R.
§§ 404.1520(d), 404.1525 and 404.1526.

Before proceeding to step four, the ALJ found that
plaintiff had the RFC to perform light work with the additional
limitations of: 1) only occasional pushing or pulling with his
left arm; 2) occasionally reaching overhead with his upper
extremities; 3) occasionally climbing, balancing, stooping,
kneeling, crouching and crawling; and 4) avoiding concentrated
exposure to extreme cold, extreme heat, humidity, fumes, dust,
odors, gases and poor ventilation.  The ALJ concluded that the
objective medical evidence, while supporting a finding of severe

impairment based on Anderson's back and arm pain, did not
support the greater level of severity suggested by plaintiff's
subjective complaints.

The ALJ discounted the opinion of Dr. Martens with respect
to Anderson's physical limitations. She found that Dr.
Martens's opinion was not supported by other evidence in the
record, which showed that Anderson was able to engage in
significant daily activities, such as grocery shopping, riding
his motorcycle and bicycle, taking public transportation and
participating in family activities. The ALJ also noted that Dr.
Martens's opinion was made after only a few visits and appeared
simply to recite Anderson's own subjective complaints at that
particular visit. Finally, the ALJ reasoned that Dr. Martens's
opinion was inconsistent with Anderson's treatment history,
which consisted of routine and conservative treatment that has
been effective in treating his back pain.

The ALJ also considered the opinions of the state agency
physicians, Drs. Titanji and Connelly, but afforded them only
partial weight because she found that plaintiff is slightly more
limited than those medical advisors concluded. Specifically,
the ALJ determined that Anderson was slightly more limited with
respect to his upper extremities, including his ability to reach
bilaterally and push and pull with his left arm. The ALJ did
not discuss any of Anderson's documented cognitive impairments

in calculating his RFC.  Based on the above RFC determination,
the ALJ concluded that since March, 2008, plaintiff has been
unable to perform any past relevant work as a general laborer.

At step five, the ALJ determined that Anderson could
perform other jobs in light of his RFC, age, education and work
experience that existed in significant numbers in the national
economy.  Based on testimony of a vocational expert at the
hearing, the ALJ found that plaintiff could perform the
following three jobs: order caller, shipping and receiving
weigher and mail clerk.  In response to questioning by
plaintiff's counsel, however, the vocational expert conceded
that a worker with the additional physical limitations described
in Dr. Martens's assessment would be unable to perform any
relevant work.  The vocational expert also acknowledged that a
worker with the additional limitation of mild cognitive
impairment, specifically the inability to concentrate for a
significant period of time, may be unable to perform any
relevant work which would require a finding of disabled.

### E.    District Court Action and Parties' Arguments

In April, 2017, the Appeals Council denied plaintiff's
request for review and the ALJ's decision became the final
decision of the Commissioner.  In June, 2017, Anderson filed his
complaint in this case.  Pending before the Court is Anderson's

motion to reverse or remand the Commissioner's decision and defendant's motion to affirm that decision.

Anderson asserts that the ALJ erred in partially denying his claim for benefits because 1) she erroneously rejected the treating source opinion of rheumatologist Dr. Peter Martens, 2) she failed to develop the record with respect to plaintiff's mental impairments and 3) her analysis of the vocational testimony was flawed.

Anderson submits that Dr. Martens's opinion as to plaintiff's physical limitations should have been afforded controlling weight because he was the only treating physician to offer a source opinion and the ALJ failed to do so. Moreover, Anderson contends that the ALJ did not offer adequate reasons for giving Dr. Martens's opinion less weight. He asserts that the ALJ should have concluded, based on Dr. Martens's assessment, that Anderson had an RFC for only sedentary work which would have necessitated a finding of disabled.

Anderson also claims that the ALJ failed to assess adequately his mental limitations and thus inaccurately analyzed the vocational expert's testimony. Anderson contends that the assessments of both Silbermann and Dr. Logan indicate that plaintiff has difficulty with his memory and that the three cognitive tests administered produced consistent results indicating that he had at least mild cognitive impairments.

Despite those various indicators of cognitive impairment, Anderson asserts that the ALJ neglected to discuss any mental or cognitive limitations in her RFC analysis. Anderson submits that the ALJ also ignored the colloquy between plaintiff's counsel and the vocational expert which indicated that a worker with mild cognitive limitations, in addition to Anderson's other physical limitations, would be unable to perform any job available in the national economy.

The Commissioner denies plaintiff's contentions and asserts that its decision should be upheld because the ALJ findings are supported by substantial evidence and are free of material errors of law. The Commissioner submits that Dr. Marten's opinion was inconsistent with other substantial evidence in the record, such as Anderson's ability to engage in various physical activities and his alleviated levels of pain after physical therapy, and that the opinion was also primarily based on plaintiff's own subjective complaints. Defendant therefore submits that the ALJ was entitled to give that opinion less weight.

With respect to the alleged mental and cognitive limitations, the Commissioner contends that the ALJ adequately developed the record as to those potential limitations. Defendant asserts that the ALJ correctly discounted the assessment of Silbermann because clinical social workers are not

acceptable medical sources under SSA regulations.  Furthermore,

defendant notes that Dr. Logan, the only psychologist who

examined Anderson, did not diagnose him with any cognitive or

mental impairment that would preclude him from working and the

state agency psychologist, Dr. William Alexander, agreed with

that determination.  Defendant argues that those determinations

are substantial evidence in support of the ALJ's conclusions at

steps four and five of her analysis.

## II.  <u>Pending Motions</u>

### A.  **Legal Standard**

Title II of the Social Security Act gives United States

District Courts authority to affirm, modify or reverse an ALJ's

decision or to remand the case for a rehearing. 42 U.S.C.

§ 405(g).  A District Court's review of an ALJ decision is not,

however, <u>de novo</u>. <u>See</u> <u>Lizotte</u> v. <u>Sec'y of Health & Human Servs.</u>,

654 F.2d 127, 128 (1st Cir. 1981).  The Act provides that the

findings of the Commissioner are conclusive if 1) they are

"supported by substantial evidence" and 2) the Commissioner has

applied the correct legal standard. <u>See</u> 42 U.S.C. § 405(g);

<u>Seavey</u> v. <u>Barhart</u>, 276 F.3d 1, 9 (1st Cir. 2001).  If those

criteria are satisfied, the Court must uphold the Commissioner's

decision even if the record could justify a different

conclusion. <u>Evangelista</u> v. <u>Sec'y of Health & Human Servs.</u>, 826

F.2d 136, 144 (1st Cir. 1987).  Substantial evidence means

evidence "reasonably sufficient" to support the ALJ's

conclusion. <u>Doyle</u> v. <u>Paul Revere Life Ins. Co.</u>, 144 F.3d 181,

184 (1st Cir. 1998).

### B. Application

#### 1. Weight of Treating Physician Opinion

Anderson contends that the ALJ committed reversible error

by failing to give controlling weight to the opinion of his

treating physician, Dr. Martens.  While the law in this Circuit

does not require an ALJ to give greater weight to the opinions

of a treating physician, the ALJ must give good reasons for his

or her decision not to give controlling weight to such an

opinion. <u>Sullivan</u> v. <u>Berryhill</u>, 317 F. Supp. 3d 658, 663 (D.

Mass. 2018) (citing <u>Arroyo</u> v. <u>Sec'y of Health & Human Servs.</u>,

932 F.2d 82, 89 (1st Cir. 1991)).  When determining whether to

attribute less than controlling weight to a treating source

opinion, the ALJ may consider: 1) "the length, frequency,

nature, and extent of the treatment relationship"; 2) "the

supportability of the opinion"; 3) "the consistency of the

opinion with the record as a whole"; 4) "the treating

physician's specialization in the relevant area of medicine";

and 5) "other factors brought to the ALJ's attention". <u>Id.</u>

(citing 20 C.F.R. §§ 402.1527(c)(2)-(6), 416.927(c)(2)-(6)).

Brevity of the treatment relationship, a lack of detail in the

explanation of the patient's physical limitations and

inconsistency with the other objective medical evidence may all be good reasons for not giving the opinion of a treating physician controlling weight. See Arruda v. Barnhart, 314 F. Supp. 2d 52, 72-74 (D. Mass. 2004).

Here, the ALJ gave several reasons for attributing less than controlling weight to Dr. Martens's opinion. First, the ALJ noted that Dr. Martens's opinion as to plaintiff's physical limitations was made after only two visits. While there is a dispute as to the exact number of visits Anderson had with Dr. Martens, the Court finds that the disputed opinion was made after no more than three visits which is a relatively brief treatment relationship. Second, the ALJ explained that Dr. Martens's opinion seemed to be based primarily on the claimant's own reports of his symptoms rather than on the objective medical evidence. Relying solely on the patient's own subjective complaints when making an opinion may be a good reason to give less weight to that treating source opinion. See Figueroa v. Colvin, Civil Action No. 14-12399-ADB, 2015 WL 4465350, at *9 (D. Mass. July 21, 2015).

Finally, the ALJ found that Dr. Martens' opinion was not consistent with the other evidence in the record, including the fact that Anderson was able to ride his motorcycle and bicycle, take public transportation and engage in certain daily activities like grocery shopping. Moreover, the ALJ noted that

Anderson had only been receiving conservative treatment and that his pain levels had actually gone down in response to physical therapy.  That evidence provides further support for her determination that, as to Anderson's physical limitations, Dr. Martens's opinion was inconsistent with other evidence in the record.

While Dr. Martens is a rheumatologist, his status as a specialist alone does not mean that the ALJ must give his opinion controlling weight.  All of the reasons provided by the ALJ, when taken together, provide ample support for her decision not to give controlling weight to Dr. Martens's opinion. Accordingly, the ALJ did not err in analyzing that treating source opinion and thus her RFC determination with respect to Anderson's physical limitations is supported by substantial evidence.  That part of the ALJ's decision will be affirmed.

### 2.  Assessment of Mental Limitations

The ALJ failed, however, to document adequately her findings and conclusions with respect to Anderson's mental limitations and the effects those limitations had, if any, on his RFC.  Remand is appropriate where the ALJ has failed to develop an adequate record upon which judicial review can be made. King v. Colvin, 128 F. Supp. 3d 421, 237, 440-41 (D. Mass. 2015) (holding that where the record contained evidence of both physical and mental limitations but "the ALJ failed to address

-17-

this evidence anywhere in his opinion", remand was appropriate because "the ALJ's decision is not sufficiently developed to allow for judicial review"). Where the record is not sufficiently developed, the plaintiff must still demonstrate that he was prejudiced by that deficiency in order to warrant remand. Id. at 237.

At step two of the five-step analysis, the ALJ determined that Anderson's anxiety and other alleged cognitive impairments were not severe. Dr. Logan assessed Anderson with a GAF score of 63, indicating only mild symptoms or limitations but Dr. Logan also noted that Anderson exhibited some difficulties with his memory. The ALJ neglected to discuss the other two cognitive tests assessed by Silbermann and Dr. Logan, which yielded a GAF score of 50 and a MoCA score of 23, respectively. The ALJ did not explain why she relied upon the GAF score of 63 but not the results of the other two cognitive tests, particularly the first GAF score of 50 which indicated severe symptoms or cognitive limitations. Based on the record as a whole, however, there is substantial evidence to support the ALJ's determination that Anderson's mental limitations are not severe given Dr. Logan's overall assessment, the scores of the latter two tests which both indicated only minor symptoms or cognitive limitations and plaintiff's ability to engage in activities of daily life.

Notwithstanding the finding that the ALJ's determination at step two of the analysis is supported by substantial evidence, her determination at step four and step five of the analysis is insufficiently developed to warrant judicial review. The ALJ explicitly found that Anderson has at least mild cognitive limitations with respect to "concentration, persistence and pace". In determining a claimant's RFC, the ALJ must consider both severe and non-severe impairments. 20 C.F.R. 404.1520(e), 404.1545, 416.920(e), 416.945. In determining Anderson's RFC here, however, the ALJ discussed only Anderson's physical limitations but did not mention his mental and cognitive limitations. It is unclear from the record whether the ALJ considered Anderson's mild mental limitations and found them to have no bearing on his RFC or whether she ignored those impairments altogether in determining his RFC.

The resulting gap in the record is significant and prejudicial in light of the testimony of the vocational expert that a person with mild cognitive impairments, in addition to plaintiff's other physical limitations, may be precluded from employment. Specifically, the vocational expert opined that a person with plaintiff's physical limitations who could not sustain attention or concentration for a significant period of time would not be able to perform any of the jobs identified at the light

exertional level.  That testimony is significant given Anderson's alleged mild cognitive impairments.

At best, the ALJ assessed Anderson's potential memory and concentration issues in light of the vocational expert's testimony and found them to be insufficiently serious to preclude employment.  At worst, the ALJ ignored the effect of plaintiff's mild cognitive impairments on his ability to concentrate even though that determination is dispositive of the issue of whether he can perform relevant work.  The Court is incapable of determining which is true based on the current record.

Anderson's motion will, therefore, be allowed with respect to the ALJ's analysis of his mental limitations at steps four and five of the analysis and the Commissioner's decision will be remanded for further development of the record.  The ALJ shall either properly document her previous consideration of plaintiff's mental impairments at steps four and five of the analysis or consider the impact of his mental impairments in the first instance.

**ORDER**

For the foregoing reasons,

1) plaintiff's motion to reverse or remand the Commissioner's decision (Docket No. 24) is **ALLOWED, in part**, and **DENIED, in part**;

2) defendant's motion to affirm the Commissioner's decision
(Docket No. 26) is **ALLOWED, in part,** and **DENIED, in part;**
and

3) the case is **REMANDED** for further consideration consistent
with this opinion.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 19, 2019